IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW BERKOWITZ, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 13-4917 |
| v. | : | |
| | : | |
| OPPENHEIMER PRECISION PRODUCTS, INC., | : | |
| | : | |
| Defendant. | : | |

MCHUGH, J.                                                                                           OCTOBER 28, 2014

### MEMORANDUM

This is an employment case where the issue is whether Plaintiff Andrew Berkowitz was lawfully fired for behavioral reasons or discriminated against for asserting his rights under the Family Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), and the Pennsylvania Human Relations Act (PHRA).  Because I find material issues of fact, Defendant's Motion for Summary Judgment will be denied.

**I.     Factual Background**

Mr. Berkowitz, the Plaintiff, first worked for Defendant Oppenheimer from May of 2005 to October of 2006, when he was involuntarily terminated because of his conduct.  Pl. Ex. B at Resp. 5.  Oppenheimer then rehired Berkowitz in November of 2007, and he remained there until he was terminated again in August of 2012—the discharge which is the subject of this case.  Id. There do not appear to have been any issues with Berkowitz's job performance, and he received exemplary performance reviews.  Fisher Dep. at 19-22; Pl. Ex. G, H, I.  Oppenheimer is in the business of making precision instrumentation for the airline industry; Berkowitz's job title was machinist.

1

Berkowitz has a demonstrated history of behavioral problems at work. When he was first terminated in 2006, it was for being verbally abusive to fellow employee George Aicroth, but Berkowitz was rehired in 2007. Aicroth Dep. at 12. At the time, he was warned that such behavior would not be tolerated. Id. at 14. Berkowitz was then reprimanded on October 29, 2010, for yelling and slamming things. Pl. Ex. DD. His direct supervisor, Brad Fisher, also testified to multiple incidents of inappropriate workplace behavior that were not written up, including several altercations between Fisher and Berkowitz. Fisher Dep. at 18-19, 23-24; Aicroth Dep. at 17. Fisher made George Aicroth aware of these incidents as well. Fisher Dep. at 24.

Berkowitz alleges that he suffers from hernia and back problems, as well as Carpal Tunnel Syndrome and degenerative arthritis in his hands. He also notes ongoing back spasms that have afflicted him for 20 years. Pl. Dep. at 58. He was diagnosed with and underwent an operation to treat a hernia around May of 2009. Pl. Ex. L. He missed approximately two and a half months of work as a result. Pl. Dep. at 53. As a result of the surgery, he alleges he was subject to a lifting restriction of 10 to 15 pounds. Id. at 53-54. He also alleges he never fully recovered from this hernia, and has provided documentation that he had been reevaluated by a doctor for pain stemming from the hernia shortly before and after his termination from Oppenheimer. Id. at 52; Pl. Ex. N, O. The pain from the hernia continues to restrict his ability to lift and he cannot sit or stand for an extended period of time. Pl. Dep. at 206. Additionally, Berkowitz states that the arthritis in his hands and wrists is painful and limits his ability to perform repetitive work, which he claims Aicroth accommodated by allowing him to break up his tasks. Id. at 59-64. Berkowitz was seen by Dr. Sands on June 26, 2012, for lower back pain (reportedly from a flare-up of the hernia) and left thumb strain, and he was advised to take time

off work until July 2, 2012.  Pl. Ex. P.  Treatment notes from this visit indicate leg pain radiating to lower back.  Pl. Ex. R.[1]

On July 11, 2012, shortly after Berkowitz returned to work, he had another outburst in which he banged pliers loudly against his desk and made comments about an engineer.  Pl. Dep. at 120, 144.  Brad Fisher reported the incident to Aicroth, Fisher's supervisor.  Aicroth Dep. at 18-19.  The following day, Berkowitz was called to meet with Aicroth and was formally reprimanded.  Pl. Dep. at 123; Pl. Ex. T.  According to Aicroth and Human Resources Director Melissa Citak, it was decided that the company would **not** terminate Berkowitz as a result of the July 11 incident.  Aicroth Dep. at 46; Citak Dep. at 27.

During this meeting, Berkowitz talked with Aicroth and Citak about his Carpal Tunnel issues.  Pl. Ex. V.  Berkowitz then was out of work again from July 13, 2012, to July 30, 2012, and provided a note from Dr. Sands covering the period of July 13 through July 20.  Pl. Ex. F.  Treatment notes from this visit on July 16, 2012, indicate pain in his hand and pain from the hernia, and he was referred to an orthopedic surgeon.  Pl. Ex. X.  On July 17, 2012, Citak sent a letter to Berkowitz informing him that the company was activating his FMLA rights and including two FMLA certification forms.  Pl. Ex. Y.  On July 23, 2012, Berkowitz saw Dr. Takei, a hand specialist, who subsequently sent his findings of arthritis of the right thumb and left trigger thumb to Dr. Sands.  Pl. Ex. AA.  Takei recommended time, rest, and activity moderation combined with bracing.  Id.  Berkowitz attempted to return to work on July 31, 2012,

---

[1] Plaintiff has bipolar disorder.  This condition is not the focus of the claim, but medical records make this clear, and Defendant's HR manager, Melissa Citak, even states in her notes: "I suggested we forward all of this documentation to Legal for review, since he is covered by the ADA for his mental disability . . . ."  Def. Ex. M.  These notes, taken as the incident was unfolding, appear to be potentially inconsistent with the later testimony Citak gave in her deposition, where she states that she "didn't really know or understand what was going on" with regard to any mental health problems from which he may have been suffering.  Citak Dep. at 43.

3

but was sent home because the doctor's note he provided was unsigned.  Pl. Ex. Q.  He officially returned to work on August 1, 2012, when he submitted a second signed note.  Pl. Ex. BB.

Upon his return, Berkowitz claims he informed Citak that he would require further treatment and may need to take further time off work.  Pl. Dep. at 91-92.  He also alleges that he told the same to Fisher and Aicroth.  Pl. Dep. at 202-03.  On August 3, 2012, Berkowitz met with Aicroth and Citak.  Pl. Dep. at 172; Citak Dep. at 37.  At this meeting, Berkowitz talked about his medical conditions and purportedly also made comments about his supervisor, Brad Fisher.  Citak told Berkowitz to leave for the day and bring back a doctor's note on the following Monday.  Citak Dep. at 44-45.  Berkowitz returned to work on Monday, and was terminated on Tuesday, August 7, 2012.

Ms. Citak, the company's HR Director, confirms in her deposition that Berkowitz was not going to be terminated for his outburst on July 12, 2012, and that decision was made after the meeting on August 3, 2012.  Citak Dep. at 32.  In fact, she confirms that Berkowitz did nothing during this interim period that would escalate the situation to warrant a termination.  Id.  Aicroth also confirms this. Aicroth Dep. at 46-47.  Rather, Aicroth and Citak describe Berkowitz as having made comments in the meeting about Brad Fisher that made them fearful for his safety.  Citak Dep. at 52; Aicroth Dep. at 47.  Thomas Kirk, President and CEO of Oppenheimer, states the reasons for the termination more broadly, in light of all of his actions.  Kirk Dep. at 34.

Berkowitz argues that the grounds asserted for his termination were pretextual, and he was terminated in light of his ongoing medical conditions, and in retaliation for asking for accommodations under the ADA and utilizing FMLA leave.

4

**II.     Summary Judgment Standard**

A moving party is entitled to summary judgment "only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2). "To defeat summary judgment [the non-moving party] must come forward with probative evidence establishing the prima facie elements of [its] claim." Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). While considering a motion for summary judgment, a court should not "resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

**III.    Disability Discrimination**

*A. ADA Discrimination*

To prevail under the ADA, a plaintiff must show that he or she (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citing Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002)). Resolution of this motion turns on whether Plaintiff has produced enough evidence to show a disability within the meaning of the Act, and whether there is sufficient evidence to sustain Plaintiff's claim that the reasons given for his termination were pretextual.

1. Disability Prong

Oppenheimer first asserts that Berkowitz cannot prove that he is disabled within the meaning of the ADA. The term "disability" is defined in the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B)

a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The ADA Amendments Act of 2008 (ADAAA) became effective on January 1, 2009. Congress amended the ADA to broaden the scope of the definition of a disability under the Act. "With the passage of the ADAAA, Congress expanded the statute's non-exhaustive list of 'major life activities' and declared that '[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.'" Mills v. Temple Univ., 869 F. Supp. 2d 609, 620 (E.D. Pa. 2012) (quoting Pub. L. No. 110–325, §§ 2(b)(1)-(6), § 3(2)(a), § 4(a), 122 Stat. 3553, 3555). Under the amended Act, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff has presented credible evidence that he suffered from numerous conditions including ongoing pain from a hernia, chronic back spasms, arthritis of the hands, carpal tunnel, and trigger finger. The existence of these problems is evidenced not only by Plaintiff's deposition, but also various doctors' reports. Mr. Berkowitz claims that these conditions resulted in the impairment of his ability to sit and stand for prolonged periods, placed restrictions on his ability to lift weight greater than 10-15 pounds, and prevented him from performing the same manual task for more than a few hours at a time.

Plaintiff must also show that those conditions substantially limited his ability to engage in these major life activities. As to that issue, "the ADAAA requires a 'less searching analysis' of whether a plaintiff is 'substantially limited.'" Mills, 869 F. Supp. 2d at 620 (citing Kravits v.

6

Shinseki, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012)). "The EEOC has noted that under the ADAAA, 'substantially limits' is 'not meant to be a demanding standard.'" Id. (citing 29 C.F.R. § 1630.2(j)(1)(i) and (iii)). "Rather, 'the determination of whether an impairment substantially limits a major life activity requires an individualized assessment,' and should 'require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.'" Id. (quoting Cohen v. CHLN, Inc., No. 10–514, 2011 WL 2713737, at *7 (E.D. Pa. July 13, 2011)); see also Rawdin v. Am. Bd. of Pediatrics, 985 F. Supp. 2d 636, 649 (E.D. Pa. 2013). In determining whether a physical condition "substantially limits" a plaintiff's ability to function, the court should not consider the ameliorative effects of mitigating measures (i.e. medications or reasonable accommodations). 42 U.S.C. § 12102(4)(E). In general, "the question of whether an individual is substantially limited in a major life activity is a question of fact." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 763 (3d Cir. 2004).

Berkowitz presents evidence in the form of doctors' reports indicating that he suffered the initial hernia in 2009, and that he continues to experience pain from that hernia through the date he was terminated. To show that he suffered lifting restrictions or encountered difficulty sitting and standing, Plaintiff relies solely on his deposition. Standing alone, this might not suffice to show a material issue of fact. The Court of Appeals has held that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Gonzalez v. Sec'y of the Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)). This rule has been extended to self-serving deposition testimony. Irving v. Chester Water Auth., 439 Fed. App'x 125, 127 (3d Cir. 2011). Plaintiff's self-interest does not, however, automatically render his

testimony legally insufficient, because the issue is whether such testimony "when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature." Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (citing Gonzalez, 678 F.3d at 263).

On this record, taking into account the doctors' reports, Plaintiff has sufficiently established a material question as to whether the major life activities of lifting, sitting, and standing are substantially limited.  Similarly, Plaintiff presents evidence of the existence of such conditions as arthritis of the hands, and describes in detail the effects on major life activities, such as performing manual tasks, in his deposition.

Viewed as a whole, though there is a fairly limited body of evidence, it is enough for a reasonable factfinder to conclude that a major life activity was substantially impaired.

2. Qualified Individual Prong

In order to be considered a qualified individual under the ADA, the Plaintiff "must 'satisf[y] the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.' and, [he] must be able to 'perform the essential functions of the position held or desired, with or without reasonable accommodations.'" Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999); Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 189 (3d Cir. 2009).

Berkowitz has presented evidence of being a skilled employee.  He includes numerous exceptional performance reviews over the years he was employed with Oppenheimer.  Defendant admits that he was good at his job, and several supervisors state that he was skilled at his job in depositions.  Given the above, there is no genuine dispute that Berkowitz was a qualified individual.

### 3. Adverse Employment Action Prong

The third and final requirement for making out a *prima facie* case of disability discrimination is a showing that would enable a reasonable factfinder to conclude that the Plaintiff has suffered an adverse employment action **because of** that disability.  Turner, 440 F.3d at 611.  Berkowitz presents evidence that the conditions from which he suffered were causing him great trouble at the time he was fired.  He had just taken FMLA leave and had visited several doctors for symptoms relating to his hernia and arthritis.  When he returned to work after this leave, he informed management of the state of his health, and the fact that he may require more time off.  He was terminated several days later.  This is sufficient evidence to enable a reasonable factfinder to conclude that his termination was the result of his medical condition.

This does not end the inquiry because, as Defendant points out, when a *prima facie* case has been established, the burden shifts to the Defendant to provide a "legitimate, nondiscriminatory reason" for the termination of the employee.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).  Here, Oppenheimer has offered evidence of Berkowitz's temper, numerous conflicts with co-workers and supervisors, the incident and written warning immediately prior to his termination for which he was terminated, co-workers' concerns about his behavior, and his statements about Mr. Fisher made just a few days prior to his termination.  Oppenheimer offers this continued behavior and concerns about the safety of its employees after the statements made by Berkowitz as the trigger for the decision to terminate Berkowitz.

In the summary judgment context, "when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perksie, 32 F.3d 759, 763-64 (3d Cir. 1994). As set forth above, Berkowitz offers evidence of excellent performance reviews up to the point of termination. Pl. Ex. G, H, I. Additionally, he points out that all of these behavioral issues had existed for years, and had been tolerated by management until his termination. Just two months before discharge, during a regularly scheduled review, Plaintiff was rated as "Good" by Mr. Aicroth in his ability to co-operate with all levels of fellow employees, and there were no areas of performance identified as needing improvement. Pl. Ex. I. In depositions, it was made clear that even after the incident for which Berkowitz was warned, management had no intention of terminating his employment. Oppenheimer cites the statements made by Berkowitz about Fisher at the meeting shortly before his termination as the final straw, but this also happened to be the meeting at which Berkowitz informed management of the extent of his medical conditions and possible need for more time off on the heels of Berkowitz's two weeks of FMLA leave. A reasonable jury could infer that Berkowitz would not have been fired absent his medical issues based on temporal proximity, the history between the parties, and its assessment of the credibility of the witnesses.

In finding an issue of fact, I place significant weight on the fact that during the meeting in question, no direct threat was made against any employee of Oppenheimer. Defendant's HR Director Melissa Citak said that it was Plaintiff's "demeanor" as "his eyes narrowed" while he described his coworker that led her to be concerned. Citak Dep. at 48. Supervisor George Aicroth cited "some very angry comments," Aicroth Dep. at 47, and "the look on his face," Pl. Ex. CC, as the basis for his concerns. On this record, where Plaintiff's volatile personality was

10

well-known to Oppenheimer, it might be more than a coincidence that the decision to terminate followed close on the heels of Plaintiff raising his ongoing medical issues and need for medical leave.  Moreover, to the extent that Plaintiff's firing was purportedly based upon an assessment of his demeanor, it seems only fair that a jury have the opportunity to assess the demeanor of those whose pretrial testimony has been offered as justification for his termination.

*B.  PHRA Discrimination*

The Parties dispute whether discrimination under the PHRA should continue to be considered co-extensively with discrimination under the ADA, as it had been prior to the amendments in 2008.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Szarawara v. Cnty. of Motgomery, No. 12-5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013).  As described above, those amendments relaxed the standard for determining what qualifies as a disability under the ADA.  See Mills, 869 F. Supp. 2d at 620; Szarawara, 2013 WL 3230691, at *2.  No corresponding amendment has been made to the PHRA.

There is a split among district courts that have addressed this issue, with the majority concluding that because the Pennsylvania legislature has not enacted a similar amendment to the PHRA, the disability prong of discrimination analysis under the PHRA should be analyzed in the same manner as pre-ADAAA claims.  Riley v. St. Mary Med. Ctr., No. 13-7205, 2014 WL 2207347, at *3 (E.D. Pa. May 28, 2014); Szarawara, 2013 WL 3230691, at *2; Deserne v. Madlyn & Leonard Abramson Ctr. For Jewish Life, Inc., 2012 WL 1758187, at *3 n.3 (E.D. Pa. May 17, 2012); Canfield v. Movie Tavern, Inc., No. 13-3484, 2013 WL 6506320, at *5 (E.D. Pa. Dec. 12, 2013).  Compare McFadden v. Biomedical Systems Corp., No. 13-4487, 2014 WL 80717, at *2 n.2 (E.D. Pa. Jan. 9, 2014).

Both Parties devote merely a footnote to the issue in their briefs. Accordingly, I will defer ruling on the post-ADAAA standard under the PHRA pending supplemental briefing by the Parties.

## IV.     Retaliation Claims

"[I]n order to establish a prima facie case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Williams, 380 F.3d at 759 (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)).

### A.  *Retaliation Under ADA*[2]

"[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested.'" Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010) (citing Williams, 380 F.3d at 759 n.2). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." Id.

The same factual analysis of the ADA discrimination claim leads to the conclusion that a reasonable jury could determine that Berkowitz had a basis to seek an accommodation. Even if he did not, there is evidence that he had a good faith belief that he was entitled to request one. There is also evidence that Oppenheimer was aware of the medical conditions which were troubling Berkowitz.

---

[2] Retaliation under the PHRA continues to be interpreted coextensively with the ADA because the changes made by the ADAAA did not affect retaliation claims.

12

Again, the McDonnell Douglas framework applies to determine whether the termination was retaliatory. The company offers Berkowitz's behavior, and specifically, his comments about Brad Fisher as the reason behind the termination. However, Berkowitz points out that the company terminated him immediately following a leave of absence and after he informed the company that he may require more time off for his medical conditions, and that this behavior was never dispositive before. There is an unusually suggestive temporal proximity between the request for accommodation and the allegedly retaliatory action. See Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007). This is enough to establish a factual dispute over the true reason for his termination.

   *B. Retaliation Under FMLA*

"[T]he FMLA requires that 'an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period' if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004) (quoting 29 U.S.C. § 2612(a)(1)(D)). "After an eligible employee returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one." Id. (citing 29 U.S.C. § 2614(a)(1)). FMLA leave is a protected employee activity. A plaintiff "must show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Id. at 146. Here, there is no question that Berkowitz took leave that was designated FMLA leave by Oppenheimer.

   The McDonnell Douglas framework applies to determine if the termination was retaliatory in nature. Oppenheimer again offers Berkowitz's behavior and his comments about Brad Fisher as the reason for the termination. Berkowitz responds in kind that the company

terminated him immediately following his FMLA leave and contemporaneously with his informing the company that he may require more time off for his medical conditions. See Deflaminis, 480 F.3d at 267. This is enough to establish a factual dispute over the true reason for his termination.

    C. *Effect of Nasser*

Oppenheimer further argues that the Supreme Court decision in Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013), requires that the Plaintiff's ADA and FMLA retaliation claims meet a "but-for" causation standard, even at the summary judgment stage. In Defendant's view, Plaintiff must prove that the adverse action would not have occurred in the absence of the retaliatory motive. Nassar was decided under Title VII, but the defense cites two cases from the Western District of Pennsylvania as support for the notion that Nasser should apply to FMLA and ADA retaliation claims because they are analyzed under the same framework. See Rubano v. Farrell Sch. Dist., 991 F. Supp. 2d 678, 704-05 (W.D. Pa. 2014); Latta v. U.S. Steel-Edgar Thompson Plant, 2:11-CV-1622, 2013 WL 6252844 (W.D. Pa. Dec. 4, 2013). Rubano recognizes that Nasser analyzed only the Title VII retaliation provision, but attaches significance to the fact that the statutory language in the ADA is almost identical. Rubano, 991 F. Supp. 2d at 705 n.21.[3]

I am not convinced that imposing a "but-for" standard on the ADA and FMLA would have any effect on resolution of the pending motion. I have already determined that a reasonable jury could conclude that "but-for" the request for accommodation and the FMLA leave, Berkowitz would not have been terminated. This is the ultimate inquiry in both Rubano and Latta for purposes of summary judgment. See Rubano, 991 F. Supp. 2d at 708-09 ("[T]he Court

---

[3] Rubano also recognizes that neither the Supreme Court nor the Third Circuit have addressed whether "but-for" causation should apply to ADA retaliation claims. Id.

14

finds that no reasonable jury could infer a causal link between Rubano's protected activity and the written reprimand."); Latta, 2013 WL 6252844, at *5 ("In sum, no reasonable jury could conclude, based on this record, that U.S. Steel retaliated against Latta for exercising his rights under the FMLA or ADA."). Plaintiff's claim survives regardless of Nasser.

V. **Availability of Punitive Damages**

The Plaintiff's causes of actions arise under the FMLA, the ADA, and the PHRA. The Plaintiff's complaint seeks punitive damages without identifying which causes of action permit such an award.

As to the PHRA, the Pennsylvania Supreme Court has ruled that punitive damages are not available. Hoy v. Angelone, 554 Pa. 134, 143, 720 A.2d 745, 749-750 (1998). As to the FMLA, there is no guidance from the Third Circuit, but the consistent view among district courts is that punitive damages are not available. See Freeman v. Phila. Hous. Auth., CIV.A. 12-1422, 2012 WL 3235323 (E.D. Pa. 2012).

Under the ADA, "[p]unitive damages are available . . . when 'the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference.'" Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 573 (3d Cir. 2002) (quoting 42 U.S.C. § 1981a(b)(1) (2000)). However, "'[m]alice' and 'reckless indifference' in this context . . . refer not to the egregiousness of the [party's] conduct, but rather to the [party's] knowledge that it may be acting in violation of federal law." Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999)).

The issue is a close one, but at this juncture, without hearing evidence, I cannot conclude with certainty that Plaintiff cannot meet the standard set forth in Kolstad. As set forth above, Oppenheimer's HR Director was aware of the protection afforded to Plaintiff under the ADA, at

15

least with respect to his psychiatric diagnosis, and recommended the involvement of the company's legal department in making decisions about Mr. Berkowitz.  Such sensitivity to the potential legal implications of an employment decision does not necessarily give rise to liability for punitive damages, but if the jury were to conclude that the basis offered for Plaintiff's termination was entirely pretextual, his discharge given the physical limitations asserted might be deemed by a jury to show reckless indifference to his statutory rights.  Accordingly, the Defendant's Motion for Summary Judgment with respect to punitive damages will also be denied, without prejudice to Oppenheimer's right to revisit this issue at the close of the evidence.  An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Court Judge